GIANT TIGER CORPORATION AND MORTIMER KRINZMAN, PROSECUTORS, v. THE BOARD OF COMMISSIONERS OF THE CITY OF TRENTON, DEFENDANT.

Submitted May 12, 1933—Decided October 3, 1933.

Before Justices CASE, BODINE and DONGES.

For the prosecutor, *Henry M. Hartman.*

For the defendant, *Romulus P. Rimo* and *Charles E. Bird.*

PER CURIAM.

The writ of *certiorari* brings up a supplement to the city ordinance regulating traffic, which supplement was passed April 7th, 1933, and, except for paragraph 2 which simply provides a penalty, consists only of the following:

"That no vehicle not actually engaged in receiving or discharging passengers or merchandise shall be ranked and/or parked on either side of St. Joes Avenue, between Meade Street and Olden Avenue, or on Meade Street, between Prince Street and St. Joes Avenue, or on Olden Avnue, between Prince Street and the bridge crossing the Delaware & Raritan Canal, or on Breunig Avenue, between Olden Avenue and the end of said street at the property known as the Ajax Plant."

The Giant Tiger Corporation operates a market in a building on St. Joes avenue, in the city of Trenton, formerly occupied by the Ajax Rubber Company. Giant Tiger Corporation and Krinzman, a lessee of one of the stalls within the market, prosecute the writ and charge that the ordinance is void because unreasonable, discriminatory and arbitrary. It may be fairly inferred from the proofs that the ordinance was passed with this particular enterprise pre-eminently in mind. Indeed, defendant's brief takes the definite position that "it was the clear duty of the municipality, in the circumstances disclosed by the evidence, to prohibit the use of the streets named in the ordinance as an incident to the business conducted by the prosecutors;" although we are noticed to no incidental use of the streets except for the parking, by

customers, of cars while making purchases and the bringing of the purchases to the cars. The ordinance affects, and affects only, the street on which the market is located and all sections of streets approaching thereto. The ordinance does not regulate parking on the affected streets; it prohibits parking absolutely at all hours of the day and night and throughout the week. The business transacted at the market is done chiefly by persons who come in automobiles. The ordinance, if enforced, would destroy the business of the market.

St. Joes avenue has a width of thirty feet from curb to curb; Meade street and Olden avenue of thirty-six feet from curb to curb. St. Joes avenue consists of a single long block extending from Meade street to Olden avenue. Breunig avenue consists of a short block running from Olden avenue to certain railroad tracks, and its width is not given. Comparing with business streets in the heart of the business section of Trenton, Front street is about six feet narrower than St. Joes avenue; Hanover street of the same width at one end and two feet narrower at the other; State Street between Broad and Warren streets about five feet wider than St. Joes avenue. On none of these streets is parking prohibited. On Front street, between Warren and Montgomery, the time during which a car may be parked is limited and confined to one side of the street between Broad and Montgomery. On Hanover street parking is confined to one side of the street. On State street parking is permitted on both sides and is unlimited as to time. There is no public street in the city having a width of thirty feet or more between curb lines, other than those named in the ordinance under review, where parking is absolutely prohibited. And this, although the neighborhood with which we are concerned is industrial and neither residential nor business; at least such is the evidence.

It is said on behalf of the city that authority for the passage of the ordinance is given by *Pamph. L.* 1928, *art.* 16, *ch.* 281, § 1, commonly known as the Traffic act, and that it became the duty of the municipality, in view of the number of cars brought to the area by the prosecutors' trade and because of the traffic conditons, to prohibit the use of the named

streets for parking purposes. Yet Abram Swan, director of public works of the city of Trenton, and a witness for the defendant, testified thus: "*Q*. Now, then, if there is a traffic condition there, couldn't it be remedied by the placing of a traffic policeman there? *A*. It may be in part. *Q*. Or by red lights or signal lights, by lights? *A*. I don't think there is any question about that; it could be."

The city of Trenton operates two open-air markets, one on South Warren street and one on Morris avenue. Police officers are regularly assigned to regulate and direct traffic there, and parking is not prohibited in any of the thoroughfares in the neighborhood of either of the markets. There is also an enclosed market privately operated on Front street, known as the Washington Market, with stall spaces for fifteen concessionaires. Parking is permitted on the southerly side of Front street between South Warren street and South Broad street for a period of two hours on the block in which the market is located. This is a one-way street, and the market is located in the business section of the city.

We recognize that the parking problem is serious and perplexing and that the effort of municipalities to solve the problem should not be unnecessarily interfered with; but the existence of a problem may not be made a cloak for discriminatory or arbitrary action. The question of the reasonable character of an ordinance is for the court, and the court will not hesitate to declare an ordinance void if it is plainly unreasonable. *Kohr Bros.* v. *Atlantic City,* 104 *N. J. L.* 468; 142 *Atl. Rep.* 34; *McGonnell* v. *Commissioners of Orange,* 98 *N. J. L.* 642; 121 *Atl. Rep.* 135; *Morgan* v. *Orange,* 50 *N. J. L.* 389; 13 *Atl. Rep.* 240. The burden is upon the prosecutors to show that an ordinance was unreasonable, and we think that they have carried that burden. The city imposed upon the immediate *situs* of the prosecutors' business drastic ordinance provisions that are not applied elsewhere in the city, though like or greater traffic problems. do exits in other portions of the city. The director of public works concedes that traffic lights would unquestionably remedy the traffic conditions. We consider that the ordinance brought up

by the writ is unreasonable and discriminatory and therefore void *in toto*.

The rights, if any, of owners of lands abutting the highway, with respect to public parking privileges are not involved and are not passed upon.

The ordinance is set aside, with costs.